Good morning, and it pleases the Court. I'm Jeffrey Ehrlich for the Appellants, and I'd like to reserve four minutes for rebuttal. The core issue in this case is whether the insurers could determine, based solely on the contents of the underlying complaint against the City, and without conducting any investigation, that there was no coverage for the City's claim as a matter of law. And before I address the merits of our coverage position, I want to very briefly discuss two important aspects of the decisional framework that this Court needs to evaluate the coverage position under, dealing with the duty to defend in California with respect to summary judgment. And the first is to take note of the fact that the burdens on the insurance company and on the policyholder are not symmetrical here. The insurance company has to show that there is no possibility of coverage as a matter of law. It has to negate coverage. By contrast, the burden on the policyholder is simply to show that there's a potential for coverage. And any factual dispute, any factual dispute, that pertains to the insurance company's coverage position or coverage defense is enough to trigger the duty to defend. So if there's any disputed facts, there's a duty to defend. The second important point is that in evaluating whether there are any disputed facts, the Court has to look at and the insurance company has to rely on the information that it had at the time it made the decision to deny coverage, which here is October 17th, 2008. So in the Appley's brief, the insurance company essentially relies on a whole lot of information that was produced during the trial, and that's not legitimate with respect to looking at the duty to defend. Now, parenthetically, the carrier could have relied on that after acquired evidence to come forward and terminate the duty to defend. But if it did that, it only terminates it prospectively. It doesn't go back and retroactively knock it out. So in evaluating whether there's a duty to defend here, the Court has to look at what the carrier had in front of it when it denied coverage. And since it didn't do an investigation, all it had were the allegations of the First Amendment complaint. So when you look at the First Amendment complaint, paragraph 7, lines 12 through 15, it says the initial sliding, an ongoing movement and progressive destabilization of the slope damage plaintiff's properties and continues to present hazards. Why doesn't that fall within the exclusion? Well, that takes me right to the issue. And our position is that, in essence, the First Amendment complaint describes two kinds of damage. There is the damage from the sliding. The complaint says that even though the bulk of the hillside never moved. So in other words, you've got a fundamentally, for the most part, a hillside that hasn't moved yet. Parts of it have moved. There has been a removal of lateral and subjacent support. And as a result, there is a risk that at some future time the land isn't stable and there's going to be more movement. But that would be excluded. Well, that's – if that's really – I should just – I mean, my effort today is to try to say, no, it wouldn't be excluded. And, you know, it's maybe a fine distinction, but I think it's an important one. And I didn't make the rule up, but the rule that I'm relying on is that in insurance law in California, there is a distinction. Courts recognize a distinction between a covered or some identified condition. Let's say collapse, because that's the case I'm relying on from the California Supreme Court. If the policy says we don't cover latent defect, termite damage, whatever, but if your deck or your house collapses, we will cover it. And then in the Rosen case, there was latent problems in termite damage, whatever, and the deck was on the verge of collapse. And the court of appeals said, for public policy reasons, an imminent collapse has to be treated like a collapse for the purpose of coverage, because it would be dangerous to make people wait until the thing actually fell all to pieces. And the California Supreme Court said, no, collapse means collapse. It doesn't mean imminent collapse on the verge of collapse. These are distinct concepts. Here, the same logic would apply. If the carriers had offered coverage for subsidence, and we had come forward and said, our land is on the verge of subsiding because the lateral and subjacent support has been removed, and now we're at risk of subsidence, the carrier would, in all likelihood based on my dealings with the carrier, say, different thing. That it hasn't subsided yet, there's no coverage. And it works the same way with exclusions. If you're going to exclude earth movement, which is what they did, then the risk of future earth movement is a distinct, it's not the equivalent. They're two different things. And so that is the essence of the argument here. That right now, if someone comes along and your downslope neighbor puts in their swimming pool and essentially carves out all your lateral and subjacent support, even if your land hasn't moved yet, it's been damaged. I mean, we've cited the Hughes versus Potomac case, where there was a house that was there, and then as a result of a storm it suddenly is now on the edge of the precipice of a 30-foot cliff. Wasn't that how they defined home or house? Well, I think there was a physical loss in that case. And the insurance company said, well, the house hasn't been damaged. The house is fine, $50 of damage, all cosmetic. And the court said, no, you've got to pay to stabilize the land. And the policy there covered physical loss. Well, anyway. So anyway, our position is that these are two distinct forms of damage, that the exclusion is framed clearly very broadly with respect to subsidence being land that moves. It doesn't say future. It doesn't say risk. It just says it means earth movement, and then it has examples of different ways to say earth movement. Where in your complaint do you say anything at all about land that had not yet moved or was at risk of moving? Well, it wouldn't be our complaint. In the underlying complaint. In the underlying complaint. They do. They seek damages in paragraph 8, 2ER56, for the cost of repair, the loss of lateral and subjacent support. And there's this discussion in the allegations that we've discussed about that some of the land is sliding and some of the land isn't sliding. The bulk of it isn't sliding. But that it creates what they said is a continues to present a hazard. But, counsel, why doesn't this fit within Exclusion X? Because if the land hasn't subsided at this moment, but it's still been damaged, it's not the risk is of future subsidence, which is not. All related to earth movement, though. Well. It gets back to earth movement as far as I can tell. I can't say that it's not logical. There's not a logical connection. But in the same way that. I suggest subsidence without earth movement. At the point right now. Unless I'm not a geologist, and I don't really understand all those. If the land is weak and at risk of future movement, that's the issue. At this point, it's sort of like if your home is red tagged, not because it's damaged, but because the authorities say it's not safe for you to stay there because it could move. But there hasn't been movement. The policy is very clear that it defines movement at the moment. So to the extent that there is land that has been damaged because it's not adequately supported, but it hasn't moved, I think that's a distinct issue. That's our position. That those are not. Subsidence and future subsidence are not equivalents. Do you have any case to support your position? Only the ones that I've discussed with you and discussed in my brief. All right. I think the one issue that I do want to make clear is that in California, the fact that. We understand that to the extent that some of the land has slid already, that wouldn't be covered. The problem for the carrier in California is in this kind of case, the third-party case, liability, uses tort principles for insurance coverage purposes. So as a result, if you have covered and uncovered damages that cannot be allocated, there's coverage for the whole loss, and the case is state versus all state. And that case dealt with the release of pollutants into the groundwater from the Springfellow acid pits, which mean nothing to you, but it was a big toxic waste thing that the state had created this mess. And some of the pollutants, it was a waste dump, some of it leached into the groundwater slowly and progressively, and that would not be covered under the state's policies. Some of it, however, was released suddenly because it was overflows from a dam or releases, and those would be covered. And there was no way to go back and figure out which part of the pollution was the result of the gradual leaching and which part of the pollution was the result of the quick releases. And the Supreme Court of California held that in that case, the carrier was on the hook for the remediation cost of all the damage, and we're relying on the same rule here. So in other words, we have land that has moved that is within Exclusion X. We have land that hasn't moved that, in our view, is not within Exclusion X. The damages are that you have to repair and stabilize the hillside, even though it hasn't moved yet, and therefore the carrier is on the hook for all of it. Now, the carriers say, oh, no, that's prophylactic repairs, and that's not covered. And we've addressed that, saying it's not prophylactic because there already is damage. If you do repairs to stop damage that has already happened from progressing further, then under a Supreme Court precedent, that is, that's the AIU case, that's mitigative, not prophylactic, and that's covered. When you say damage that's already happened, what do you mean? I mean, to the extent that there is the sliding that Judge Peya has talked about, that there is already damage. So you have a mixture of covered and uncovered damage, in our view, but the carrier is on the hook for all of it. I'm going into my rebuttal time. I'd like to save it. Okay, you can save your time. Thank you. Good morning. I'm Rosemary Springer. I represent Appellee's Insurance Company of the State of Pennsylvania and Lexington Insurance Company. Would you speak up a little, please? I will try. Thank you. I'm going to start where the appellant says we should start, which is the underlying complaint and the allegations in the underlying complaint. And as already was pointed out by the Court, the critical paragraph, really, for this where they lay out their allegations of property damage is paragraph 7. And that paragraph, which was cited by the district court in his opinion as well, describes sliding in all areas, all areas, not some, not a portion, sliding in all areas. This was a landslide. That's why there's property damage, from sliding in all areas. That same paragraph also refers to ongoing movement. Our damage was caused by the sliding and the ongoing movement. That's what the plaintiffs alleged. That's what they're seeking coverage for, property damage caused by sliding in all areas and ongoing movement. So you look to the summary judgment motion. And the city said it was undisputed that all the property damage alleged in the underlying action resulted from earth movement. So they said that's undisputed. The complaint, it makes sense that it's undisputed because that's what the underlying complaint says. So then you look to our exclusion in our policy, which excludes all property damage arising out of land subsidence. And subsidence is described fairly broadly to describe all forms of earth movement, including settling, shifting, sliding. So it's very difficult on this record to see how the appellant says some land didn't move. They, I guess, look to that language that was quoted today about loss of lateral and subjacent support. But what that says is, oh, there might be a part of the hillside. It's not alleged and it's not disputed that all the land moved. But if there was some that didn't move because it lost support, how did it lose support? Because all the land around it moved. So if you have an exclusion that excludes property damage arising out of earth movement and there's some piece of the hillside that didn't move but all the land around it moved, so it's vulnerable to future movement, that's excluded as well. Because what appellant seems to be leaving out is that this exclusion does not just exclude earth movement. It excludes property damage arising out of earth movement. And cases in California, both California state cases and Ninth Circuit cases, have construed arising out of broadly. It doesn't even mean proximate cause or resulted by or because of. It's related to flowing from, emanating from. So you have a broad exclusion. You have undisputed that allegations in the complaint only allege property damage caused by earth movement. The district court on that record found there was no duty to defend here. We urge the court to affirm on that basis. And there are also alternatively two grounds supported in the record that support affirmance as well that I'll briefly address. One is that these policies have as a condition precedent to any coverage at all that the city pay $2 million in defense costs before there's any duty to defend. The city does not dispute that as of the time of tender, no such payment had been made. The city does not dispute that it never produced invoices during the entire pendency of the underlying action showing any payment. On summary judgment, we raised this argument saying it was the city's burden to prove payment and there was no evidence of payment. The only evidence they presented in response was a declaration that they had incurred certain defense costs and a summary of those costs without any explanation really of what those costs were and with absolutely no evidence of payment. That failure of proof on an issue of which they have the burden of proof is a further ground for affirmance. The district court didn't rely on that ground, correct? It was briefed in the district court, but the district court did not state that he didn't need to reach the other grounds because he affirmed on the exclusion. And there was actually some evidence, right? There was no evidence of payment, no. Well, wasn't there a declaration? The declaration only said that defense costs, I forget the exact wording, but it was something like cross the line. But never did they say paid. And incurred is not enough. They could have incurred $5 million in defense costs, but until they pay something, it doesn't exhaust the self-insured retention. And the final is that there was also no occurrence. A negligent act by the insured during the policy period. The policy period was 2004 to 2005, which is when the property damage, the landslide, occurred. But the negligent act attributed to the city was the trail widening project. And documents produced to the insurers at the time of tender showed that that negligent act, the carving into the hillside, happened in 1992. The policies require the occurrence have happened during the policy period, and the record shows that that did not occur and that the insurers knew of this and had that information at the time of tender. Unless the Court has any questions. Ginsburg. I'd like to ask a question. Suppose we find it is possible that the city's action damaged the property, but only resulted in subsidence in a few places. In that case, should we also find that Exclusion X does not apply? No. It's undisputed that the city's actions did cause subsidence. And it's also, there's no, I guess, there's no evidence in this record that there was not subsidence, that any land that didn't move was as well damaged by subsidence. The key is that the exclusion does not just exclude subsidence. It excludes any property damage arising out of subsidence for any reason whatsoever. That's the wording of the exclusion. So even if there was land that was weakened due to the land around it moving, that would still be barred under the exclusion because it arose out of the surrounding subsidence. So it would be barred in any event. It would be barred in any event. And if the land did not move and was not damaged at all, it would be barred by Exclusion Y. Because Exclusion Y bars all claims for inverse condemnation, which is what this case was for, except for physical damage to tangible property. So if there was some piece of land that wasn't damaged at all, didn't move, that's barred by Exclusion Y. And that's what the district court reasoned as well. Thank you. Thank you. Rebuttal. I see that in my preparation for oral argument, I spliced things that were in two different places. And so when I said the complaint said it hadn't moved, I was actually referring to the testimony of the homeowner's expert, Mr. Shires. If you look at page 46 of our opening brief, there's a discussion, Mr. Shires' explanation, of that some of the land, that most of the land didn't move and that there were isolated failures. Well, you asked us to look at what the insurance company had at the time it made its decision. Right. Because apparently it didn't rely on any extrinsic. They didn't. But we can rely on extrinsic evidence to show what an investigation would have shown. So, yes, you're looking skeptical, but actually that I have a case for. Is it in your brief? Yes, it's in our reply brief. It's the Mullen case. I went to Mullen v. Glenn Falls and Hartford v. Swift Distribution. But Mullen makes it clear that you can't resort to hindsight, and the risk is that if you do, if you don't do an investigation. Well, what's resorting to hindsight here? If you look at this complaint, I mean, paragraph 7, as she said, and as I pointed out when I read it when I was preparing for argument here, I mean, the initial sliding in ongoing movement and progressive destabilization of the slope damaged plaintiff's properties and continues to present a hazard. The point is if they'd done an investigation, it would have been clear that there was, it wasn't, the whole slope didn't move, parts moved, parts didn't, and that parts were at risk. They didn't do an investigation, but they're charged with knowledge of what an investigation would have shown to create the factual issue. Okay, an investigation where they're supposed to do when your complaint seemed to negate it? Well, that's a choice that they have, but they can come out, they do a full investigation, and they come look at the site, they hire experts, they look at it and decide what they want to do. If they don't do that, that's fine, but they are charged with what the investigation would have shown, which is here that it wasn't a case where the entire hillside slid down, that there were isolated failures. I'd like to just quickly address. I think Judge Buckle had another question. Didn't the homeowner's experts say, over here a little bit, that the earth material is semi-elastic, so when you cut out a hole it wants to rebound into that void that's created by the hole, and so you get what we call stress release, and so what it does is it loosens the soil, basically. Yes. It makes it less strong and it makes it move. So even on the expert, I don't, maybe I missed something, I don't see where. The point that I was trying to make is that the complaint, I think, alludes to and reasonably you can infer from, and if you look at the testimony of the expert, it makes clear that there are these two types of different damage here. You've got portions of the slope that have slid. Those fall within exclusion X. And then in our view, and just the factual predicate for that, is that there are other portions that are at risk and have to be stabilized, but they have not moved, and therefore they have not subsided. That was the point. With respect to the conditions precedent, we do address those both in the reply, and since I'm now out of time, I guess I'll have to rely on the arguments that we. I'm sure they're advanced in your brief. They are. Okay. Thank you. Thank you for your attention. I appreciate it. We appreciate your argument, counsel, on the matter submitted.
judges: D.W. Nelson, Paez, Bucklo